United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DONALD H. PUTNAM,                        No. C 05-1330 CW

        Plaintiff,                       ORDER GRANTING IN
                                         PART AND DENYING
     v.                                  IN PART
                                         DEFENDANTS'
PUTNAM LOVELL GROUP NBF SECURITIES,      MOTION TO DISMISS
INC., a Delaware corporation;
NATIONAL BANK OF CANADA, a Canadian
chartered bank; NATIONAL BANK
FINANCIAL, INC., a Quebec
corporation; and DOES 1-20,
inclusive,

        Defendants.
_____/

        Defendants Putnam Lovell Group NBF Securities, Inc., (PLNBF),

National Bank of Canada (NBC) and National Bank Financial, Inc.,

(NBF) (collectively, Defendants) move pursuant to Federal Rules of

Civil Procedure 12(b)(6) and 9(b) to dismiss Plaintiff Donald

Putnam's complaint.  Plaintiff opposes this motion.

        The matter was heard on August 12, 2005.  Having considered

all of the papers filed by the parties and oral argument on the

motion, the Court GRANTS Defendants' motion in part and DENIES it

in part, as explained below.

1

BACKGROUND

2      Unless otherwise noted, the facts are drawn from Plaintiff's

3  complaint and the July 23, 2003 memo attached as an exhibit to the

4  complaint, and are taken as true.

5      Plaintiff is a founder and ex-CEO of the former Putnam Lovell

6  Group (Putnam Lovell), a boutique investment banking firm.   In

7  April, 2002, Putnam Lovell was acquired by NBF, a Canadian broker-

8  dealer and subsidiary of NBC, a large chartered Canadian bank.   The

9  surviving entity was named PLNBF.   Plaintiff retained managerial

10  control of certain businesses, known collectively as the Global FIG

11  Business.   The April 13, 2002 Agreement and Plan of Merger[1]

12  provides that decisions regarding "hiring or termination of senior

13  professional staff of the Global FIG Business . . . will, in each

14  case, be subject to prior review and approval by the Chief

15  Executive Officer of NBF."   Merger Agreement (MA) § 8.4.4.2.3.

16  Plaintiff was to be "subject to the supervision and direction" of

17  NBF, but retained "day to day responsibility for the management of

18  the Global FIG Business on a basis consistent with that division's

19  business plan and NBF's general operating procedures."   MA

20  § 8.4.4.2.1.   Plaintiff contends that his management

21  responsibilities were such that "he and only he could hire or fire

22  personnel within [the FIG Business] so long as he was employed by

23

_____

24      [1]Defendants request that the Court take judicial notice of
excerpts of the Merger Agreement; Plaintiff objects to Defendants'
25  identification of the relevant excerpts, and instead requests that
the Court take judicial notice of the entire document.   Because the
26  authenticity of the Merger Agreement is not subject to dispute, and
the complaint refers to it repeatedly, the Court grants both
27  requests and takes judicial notice of the entire document.

28

**United States District Court**
For the Northern District of California

PLNBF."  Complaint ¶ 9.

The Merger Agreement's choice-of-law section provides that it shall be construed in accordance with New York law.  MA § 11.8.

The Merger Agreement divided the Putnam Lovell shareholders into two groups, one to receive cash at closing and a second, termed the FIG Shareholders, to receive shares in NBC, which were deposited into escrow for release in installments.  Plaintiff was a FIG Shareholder holding the majority of the escrow and the Managing Member of the limited liability corporation governing the interests of the FIG Shareholders.  The last installment (the Global FIG Installment) constituted a substantial portion of the consideration for the merger and was scheduled to be released from escrow on December 31, 2004.  The release and size of the Global Release Installment depended in part upon the amount of revenue generated by the FIG Business during this "Earn Out" period.

After the merger transaction was completed, NBF executives negotiated with Plaintiff to terminate twelve PLNBF employees. Because the proposed personnel reduction would affect the ability of the FIG Business to meet the agreed-upon revenue targets, NBF and NBC agreed, as set forth in the July 23, 2003 memo, to revise the Earn Out formula.  The memo, authored by NBF executive Kym Anthony and sent to FIG Shareholders, is short enough to be quoted in its entirety,

> I understand that Don [Plaintiff] and Ian [Brimecome, another PLNBF manager] have had discussions with you regarding contemplated changes to the arrangements regarding the contingent Earn Out arrangements, i.e., Global FIG Installment, agreed to in the context of the purchase by NBF of Putnam Lovell.  I understand that your discussions have taken place in the context of focusing on the role of the FIG

leadership team relative to profitability, expense control and
retention issues regarding Global FIG as opposed to just
revenues.
    I wish to confirm that these Earn Out arrangements
regarding each of you, other than Don and Ian, will be
modified so that the test for your being able to earn your
share of the Global FIG Installment will change from a revenue
and time contingency test to a time contingency test only,
(i.e., NB will waive the revenue hurdle test, and the
condition for you being entitled to your share of the
Installment will only be a function of your continued
employment through to the end of the Earn Out Period, i.e.
September 30, 2004).  For Don's and Ian's share, the same time
test will apply, but will also include certain other tests
relating to the performance of the Global FIG business.  All
other terms and conditions regarding the Earn Out will remain
the same, and will continue to apply.  The details of these
arrangements and the related paperwork will follow in the next
few weeks.
    I thank you for your efforts to date, and know that you
will all continue to contribute to the success of Global FIG
and to the firm.

In or around March, 2004, Putnam and Brimecome reached an oral
agreement with NBC and NBF regarding the other tests relating to
the performance of the Global FIG business.  Complaint ¶ 15.
According to this alleged oral agreement, forty percent of the
Global FIG Installment would be earned by Plaintiff and Brimecome
if they remained as PLNBF employees through September 30, 2004;
twenty-five percent of the Global FIG Installment would be earned
based on successful cost cutting measures (i.e., termination of
PLNBF employees); and the remaining thirty-five percent of
Plaintiff and Brimecome's Global FIG Installment would be
"dependent upon the FIG Business revenues achieving _revised_
targets, the details of which the parties agreed to negotiate in
good faith."  _Id._  (Emphasis in original.)

    Documents memorializing this oral agreement were drafted, but
were "not formally executed" because of a recommendation by counsel

4

United States District Court

For the Northern District of California

for NBF that doing so would increase tax risks for employee

shareholders. Id. ¶ 16. Plaintiff was urged to rely on the July

23, 2003 memo and related promises "instead of pressing for formal

documentation." Id. Acting in reliance on the alleged oral

agreement, Plaintiff terminated the twelve PLNBF employees

originally targeted, as well as other revenue-producing personnel.

In December, 2004, Plaintiff also terminated Brimecome, likewise in

reliance on promises made regarding adjustments to the Earn Out

formula.

In November and December, 2004, NBC and NBF told Plaintiff

that they never agreed to modify the Earn Out formula associated

with the Global FIG Installment. NBC and NBF failed to release any

part of the Global FIG Installment to Plaintiff or other FIG

Shareholders. When Plaintiff accused NBC and NBF of reneging on

their promises, Defendants terminated Plaintiff without cause and

with no prior notice.

Plaintiff was denied severance payments upon termination,

thereby depriving him of "compensation rights under his implied

contract with PLNBF, NBC and NBF," in that those entities had

assumed Putnam Lovell's long-standing policy and practice of

providing "substantial severance and benefit payments to executives

and employees upon their retirement." Complaint ¶ 24. NBC and NBF

had similar long-standing policies regarding severance payments,

and NBF's Chief Human Resources Executive informed Plaintiff in

January, 2005, that he would be entitled to a benefits package

worth approximately $2.2 million if he were terminated. Plaintiff

was then told that he could obtain these benefits only if he agreed

to forego payment of the Global FIG Installment.

Plaintiff brings seven claims.  The first five are based on NBC and NBF's alleged failure to release the Global FIG Installment, as follows:  (1) breach of express oral contract, against NBC and NBF; (2) breach of implied contract, against NBC and NBF; (3) promissory estoppel, against NBC and NBF; (4) fraud and deceit, against NBC and NBF; and (5) breach of fiduciary duty, against NBC only.  The last two claims for (6) breach of implied contract and (7) breach of the implied covenant of good faith and fair dealing are brought against NBC, NBF and PLNBF, and relate to their alleged failure to provide Plaintiff with a severance and benefits package.

LEGAL STANDARDS

I.  Failure to State a Claim

A motion to dismiss for failure to state a claim will be denied unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  <u>Falkowski v. Imation Corp</u>., 309 F.3d 1123, 1132 (9th Cir. 2002), <u>citing</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002).  All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff.  <u>See</u> <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986).  A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  "Each averment of a pleading shall be simple, concise, and direct.  No technical forms of pleading or motions are required."  Fed. R. Civ. P. 8(e).  These rules "do not require a claimant to

set out in detail the facts upon which he bases his claim.  To the
contrary, all the Rules require is 'a short and plain statement of
the claim' that will give the defendant fair notice of what the
plaintiff's claim is and the grounds on which it rests."  Conley v.
Gibson, 355 U.S. 41, 47 (1957).

When granting a motion to dismiss, a court is generally
required to grant a plaintiff leave to amend, even if no request to
amend the pleading was made, unless amendment would be futile.
Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911
F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment
would be futile, a court examines whether the complaint could be
amended to cure the defect requiring dismissal "without
contradicting any of the allegations of [the] original complaint."
Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).
Leave to amend should be liberally granted, but an amended
complaint cannot allege facts inconsistent with the challenged
pleading.  Id. at 296-97.

II.  Rule 9(b)

"In all averments of fraud or mistake, the circumstances
constituting fraud or mistake shall be stated with particularity."
Fed. R. Civ. P. 9(b).  The allegations must be "specific enough to
give defendants notice of the particular misconduct which is
alleged to constitute the fraud charged so that they can defend
against the charge and not just deny that they have done anything
wrong."  Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).
Statements of the time, place and nature of the alleged fraudulent
activities are sufficient, Wool v. Tandem Computers, Inc., 818 F.2d

United States District Court
For the Northern District of California

7

1433, 1439 (9th Cir. 1987), provided the plaintiff sets forth "what
is false or misleading about a statement, and why it is false." In
re GlenFed, Inc., Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994).
Scienter may be averred generally, simply by saying that it
existed. See id. at 1547; see Fed. R. Civ. P. 9(b) ("Malice,
intent, knowledge, and other condition of mind of a person may be
averred generally").  As to matters peculiarly within the opposing
party's knowledge, pleadings based on information and belief may
satisfy Rule 9(b) if they also state the facts on which the belief
is founded.  Wool, 818 F.2d at 1439 (9th Cir. 1987).

DISCUSSION

I.  Choice of Law

    In diversity actions such as this, federal courts must apply
the conflict of law principles of the forum State, here California.
S.A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co., 641 F.2d
746, 749 (9th Cir. 1981).  California law applies the principles of
Restatement § 187, which "reflect a strong policy favoring
enforcement" of contractual choice-of-law provisions.  Nedlloyd
Lines B.V. v. Superior Court, 3 Cal. 4th 459, 465 (1992).

    The parties agree, pursuant to California conflict of law
principles, that Plaintiff's sixth and seventh employment-related
claims are governed by California law.  However, they dispute the
applicable law relating to Plaintiff's five Global FIG Installment
claims.

    Defendants argue that the Global FIG Installment claims are
governed by the Merger Agreement's choice-of-law clause, which
specifies that the Agreement is to be governed by New York State

United States District Court

For the Northern District of California

law.  Plaintiff argues that these claims arise out of a later contract that "superseded all portions of the Merger Agreement bearing on Putnam's current claim to a share of the Global FIG Installment," including the choice-of-law provision.  Pl.'s Opp. at 8.

Plaintiff's position is somewhat inconsistent.  In the complaint, Plaintiff alleges that he relied on the July 23, 2003 memo to support an alleged later oral contract.  In his brief, Plaintiff states that the oral contract was in fact "created by the July 23, 2003 memorandum" as well as other representations and conduct.  The memo itself, in turn, provides, "All other terms and conditions regarding the Earn Out will remain the same, and will continue to apply."  None of Plaintiff's allegations suggest that the later oral contract modified or rescinded the Merger Agreement's choice-of-law clause.  If the new agreement modified some but not all of the terms of the original agreement, California choice-of-law principles would "provide[] that the unmodified terms of the original agreement are to be applied together with the terms of the new, modifying agreement." Gen. Signal Corp. v. MCI Telecommunications Corp., 66 F.3d 1500, 1506 (9th Cir. 1995).  In that case, the choice-of-law provision selecting New York State law would apply to the oral agreement.

It might be possible for Plaintiff to show, consistent with the complaint, that the later oral contract did indeed entirely supercede all portions of the Merger Agreement which pertain to Plaintiff's share of the Global FIG Installment, including its choice-of-law provision.  Therefore, the Court addresses both

1   California and New York law in its order.

2   II.   Breach of Oral Contract

3         Defendants move to dismiss Plaintiff's first Global FIG

4   Installment cause of action for breach of oral contract on the

5   grounds that this claim fails to allege the elements of an

6   enforceable contract and is barred by the statute of frauds.   In

7   his opposition, Plaintiff characterizes the alleged oral contract

8   as a three-stage, divisible contract which could be performed in

9   less than one year.   Defendants, on the other hand, describe the

10  alleged oral contract as a modification of the Merger Agreement,

11  and as such required by the statute of frauds to be in writing.

12        A.   Pleading of Valid Oral Contract

13             1.   Mutual Assent

14        Defendants contend that the fact that the parties failed to

15  reach an agreement regarding revised revenue targets for the FIG

16  Business shows that any alleged oral contract was not enforceable.

17  The complaint states that thirty-five percent of the Global FIG

18  Installment would be dependent upon the FIG Business revenues

19  achieving <u>revised</u> targets, the details of which the parties were to

20  negotiate in good faith.   A "mere agreement to agree, in which a

21  material term is left for future negotiations, is unenforceable."

22  <u>Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher</u>, 417 N.E. 2d

23  541, 543 (N.Y. 1981) (holding unenforceable a lease provision with

24  rental amount "to be agreed upon").

25        Plaintiff argues that, even if the oral contract is not

26  binding with respect to the thirty-five percent of the Global FIG

27  Installment being dependent on revised revenue targets, the oral

28                                  10

*United States District Court*
For the Northern District of California

**United States District Court**

For the Northern District of California

contract was divisible into three stages, and therefore any defect caused by the "agreement to agree" did not affect the parties' obligations with respect to the remaining sixty-five percent of the Global FIG Installment.  Plaintiff maintains that even a partially valid contract is sufficient to overcome Defendants' Rule 12(b)(6) motion.

Defendants argue that this position is inconsistent with that taken in the complaint because the complaint never describes a "three-stage" divisible oral contract.  However, Plaintiff's current characterization of a three-stage, divisible contract is not necessarily inconsistent with the complaint's references to a single oral contract resulting in a single share of the Global FIG Installment.  Plaintiff could be entitled to relief on the basis of a single oral contract divisible into three severable parts.

Defendants correctly note that there is a "presumption against finding a contract divisible, unless expressly stated in the contract itself, or the intent of the parties to treat the contract as divisible is otherwise clearly manifested."  Williston on Contracts § 45:4.  However, Plaintiff contends that he clearly meant to treat the contract as divisible, based on his performance of a portion of the alleged oral contract, and that the complaint is not otherwise inconsistent with an allegation of a divisible oral contract.  While the complaint does not allege that the oral contract contained an express provision of divisibility, such a provision could have superceded either or both of the Merger Agreement and the July 23 memo.

For these reasons, the Court finds that mutual assent to at

11

least a portion of a three-stage, divisible contract would not be inconsistent with the allegations in the complaint.

## 2.   Intent to Be Bound

Defendants contend that the July 23, 2003 memo attached to the complaint suggests that the parties did not intend to be bound by any modification to the Merger Agreement until the parties had executed a formal written amendment.  Yet Plaintiff's allegations in the complaint suggest that the later oral contract superceded this portion of the July 23, 2003 memo.  According to the complaint, Defendants refused to sign the later draft written agreement in order to avoid increased tax risks, yet encouraged Plaintiff to rely on the new agreement, based on the July 23, 2003 memo as well as "related promises."  Complaint ¶ 16.  While Plaintiff cannot prove an intent to be bound by a later oral contract based on the terms of the July 23, 2003 memo, which suggests a writing requirement, it would be possible for Plaintiff to prove facts to support NBC and NBF's intent to be bound to a later oral contract based on "related promises."

## 3.   Valid Consideration

Defendants contend that Plaintiff's alleged consideration was insufficient because Plaintiff did not retain the authority to fire PLNBF staff.  Plaintiff explains that allegations in his Complaint and the terms of the Merger Agreement are not inconsistent because the latter provides Mr. Anthony with a veto over Plaintiff's decisions to hire and fire PLNBF staff, but does not allow NBF to hire and fire staff independently.  This explanation is consistent with the language of the Merger Agreement, which specifies that

United States District Court

For the Northern District of California

Plaintiff retains day-to-day responsibility for the management of the Global FIG Business but that any termination of employees is "subject to prior review" of NBF.  MA § 8.4.4.2.3.  Therefore, Plaintiff may be able to prove, consistently with the complaint, that the oral contract is supported, at least in part, by valid consideration.

B.  Statute of Frauds

New York's statute of frauds applies to an agreement which by "its terms is not to be performed within one year from the making thereof."  N.Y. Gen. Oblig. § 5-701(a).  The statute of frauds therefore applies to the April, 2002 Merger Agreement, which depended upon calculation of cumulative revenues over a three-year period ending September 30, 2004.  MA § 2.6.2.1.

Defendants argue that because the statute of frauds applies to the Merger Agreement, it must also apply to the alleged oral contract, which modified or rescinded portions of the Merger Agreement.  However, the authority Defendants cite in support of this position involves only modifications which in themselves cannot be performed within one year.  See Nikora v. Mayer, 257 F.2d 246, 249 (2nd Cir. 1958) (involving modification of long-term mortgage contract); New York Yankees P'ship v. Sportschannel Assoc., 510 N.Y.S. 2d 870, 872 (App. Div. 1987) (involving alleged modification of contract in which performance spanned two years from point of modification).  In contrast, a contract originally required by the statute of frauds to be in writing "may be modified without a writing at a time when performance within the year is possible."  Lieberman v. Templar Motor Co., 140 N.E. 222, 224 (N.Y.

1923).

In this case, the alleged oral contract could be performed in less than one year.  Therefore, Plaintiff's Global FIG Installment claims arising out of the alleged oral contract are not barred by the statute of frauds.

III.  Breach of Implied Contract and Promissory Estoppel Claims

Defendants move to dismiss Plaintiff's claims for breach of an implied contract and for promissory estoppel on the grounds that these claims are precluded by the express Merger Agreement.

A contract "cannot be implied . . . where there is an express contract covering the same subject-matter." Missigman v. USI Northeast, Inc., 131 F. Supp. 2d 495, 512 (S.D.N.Y. 2001) (quoting Miller v. Schloss, 218 N.Y. 400, 406 (1916)); see also Eisenberg v. Alameda Newspaper, Inc., 74 Cal. App. 4th 1359, 1387 (1999) ("There cannot be a valid express contract and an implied contract, each embracing the same subject, but compelling different results."). Similarly, a "valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Telecom Int'l Am., Ltd., v. AT&T Corp., 67 F. Supp. 2d 189, 206 (S.D.N.Y. 1999) (quoting Clark-Fitzpatrick, Inc., v. Long Island R.R. Co., 70 N.Y. 2d 382, 388 (1987)).

Plaintiff does not contest this authority.  Instead, Plaintiff argues, as the Court above finds, that he has sufficiently alleged an alternative oral contract which modified or superceded the relevant portions of the Merger Agreement.  To the extent that this oral contract is express, however, it would render the implied

**United States District Court**

For the Northern District of California

contract and promissory estoppel claims superfluous, unless Plaintiff were also to allege that the portions of the Merger Agreement embracing the same subject matter were rescinded.  To the extent that the alleged contract can only be inferred from the parties' actions, or that there is no oral contract but only a promise on which Plaintiff detrimentally relied, the claim would indeed be barred by the Merger Agreement, which also covers the same subject matter but would compel a contrary result.

Because the Court finds that Plaintiff has failed to state a claim for breach of an implied contract with respect to the Global FIG Installment or for promissory estoppel, the Court grants Defendants' motion to dismiss these two claims.  This dismissal is with leave to amend if Plaintiff can truthfully allege, consistent with his original complaint, that the portions of the Merger Agreement embracing the same subject matter as the alleged implied contract or alleged promise were rescinded.

IV.  Fraud and Deceit

Defendants move to dismiss Plaintiff's claim for fraud and deceit on the grounds that it is barred under New York and California law because it merely duplicates his breach of contract claims.

Under New York law, a misrepresentation which is a statement of intent to perform under a contract cannot constitute a fraud claim.  <u>Manning v. Utils. Mut. Ins. Co.</u>, 254 F.3d 387, 401 (2nd Cir. 2001) (citing <u>Bridgestone/Firestone, Inc., v. Recovery Credit</u>

15

Servs., Inc., 98 F.3d 13, 19-20 (2nd Cir. 1996)).[2]  In order to
maintain a tort claim for fraud based on an alleged breach of
contract, a plaintiff must "either (i) demonstrate a legal duty
separate from the duty to perform under the contract; or
(ii) demonstrate a fraudulent misrepresentation collateral or
extraneous to the contract; or (iii) seek special damages that are
caused by the misrepresentation and unrecoverable as contract
damages."  Bridgestone/Firestone at 20 (internal citations
omitted).

Plaintiff argues that the conduct alleged constitutes more
than failure to perform the alleged contract, but fails to explain
how the conduct went beyond intentional failure to perform.  The
list of allegedly fraudulent acts committed by Defendants includes
acquiring Putnam Lovell, forcing Plaintiff to terminate his
employees and failing to release the Global FIG Installment.  See
Pl.'s Opp. at 23.  All of these acts involve either Plaintiff's
performance in reliance upon, or Defendants' non-performance of,
the alleged oral contract.  Plaintiff therefore has not
sufficiently alleged the type of misrepresentations that would
allow him to recover in tort under Bridgestone/Firestone.  Nor has
Plaintiff alleged that Defendants' alleged misrepresentations
exposed him to liability for special damages.

Under California law, on the other hand, a "promise made

---

[2]A contract induced by fraud may be subject to an action for
rescission or for restitution under the contract.  22(A) N.Y. Jur.
2d Contracts § 539 (citing Vitale v. Coyne Realty, Inc., 414 N.Y.S.
2d 388 (4th Dept. 1979)).  However, § 539 does not support
Plaintiff's tort claim for fraud.

United States District Court
For the Northern District of California

**United States District Court**

For the Northern District of California

without any intention of performing it" does constitute "actual fraud."  Cal. Civ. Code § 1572(4).  A tortious breach of contract may be found "when the breach is accompanied by a traditional common law tort, such as fraud . . . ."  <u>Robinson Helicopter Co., Inc., v. Dana Corp.</u>, 34 Cal. 4th 979, 990 (2004) (quoting <u>Erlich v. Menezes</u>, 21 Cal. 4th 543, 553 (1999)).  In this case, Plaintiff alleges that Defendants entered into the contract with the fraudulent intent not to perform it.  These allegations do, as noted above, incorporate the facts of Plaintiff's contract claims, and are sufficiently detailed to give Defendants notice of the particular misconduct which is alleged to constitute fraud.

For these reasons, the Court denies Defendants' motion to dismiss Plaintiff's fraud claim.  However, if it is later decided that New York law applies to this claim, it will be dismissed.  In light of that, Plaintiff may amend it, in an abundance of caution, if he can allege, truthfully and without contradicting the original complaint, conduct that constitutes breach of a duty independent of the contract or special damages.

V.   Breach of Fiduciary Duty

Plaintiff alleges that NBC breached a fiduciary duty to him as a minority shareholder in NBC.  Defendants move to dismiss this claim on the grounds that such a duty is not legally cognizable.

Under New York law, a corporation does not have a fiduciary relationship with its minority shareholders.  <u>State Teachers Ret. Bd. v. Fluor Corp.</u>, 566 F. Supp. 939, 941 (S.D.N.Y. 1982).  However, the applicability of New York law need not be decided in this motion to dismiss.

17

United States District Court

For the Northern District of California

Plaintiff asserts that NBC's transactions with him are "most likely governed by Canadian or California law."  Pl.'s Opp. at 24. However, Plaintiff does not show that the law of those jurisdictions would avail him.  Cf. Jones v. H.F. Ahmonson & Co., 1 Cal. 3d 93, 110 (1969) (noting fiduciary duty is owed under California law to minority shareholders by officers, directors and controlling shareholders); Weiss v. Schad, [1999] O.J. No. 4356 ¶ 89 (Ont. S.C.J.) (noting general rule that "directors and controlling shareholders do not owe fiduciary duties to minority shareholders," first set forth in Percival v. Wright, [1902] 2 Ch. 421 (Eng. Ch. Div.)).  Plaintiff's fiduciary duty claim against NBC is dismissed with leave to amend to identify a legally cognizable basis for this claim.

VI.  Breach of Implied Contract

Defendants move to dismiss Plaintiff's claim for breach of an implied contract to pay severance benefits on the grounds that such an implied contract runs contrary to PLNBF's express policy.  In any event, Defendants argue, Plaintiff's claim should be dismissed against NBC and NBF because they did not employ Plaintiff.

To support this portion of their motion, Defendants request that the Court take judicial notice of an excerpt from Putnam Lovell's 2001 Employee Handbook, authored by Plaintiff, which states in relevant part that "Putnam Lovell does not, as a matter of policy, provide severance pay to employees whose employment is terminated for any reason."  Defendants' Request for Judicial Notice, Ex. 2, Putnam Lovell Employee Handbook.  Defendants argue that this is an "express written agreement, signed by the employee,

**United States District Court**
For the Northern District of California

1   [which] cannot be overcome by proof of an implied contrary

2   understanding." <u>Guz v. Bechtel Nat'l, Inc.</u>, 24 Cal. 4th 317, 320

3   n.10 (2000).

4      The Court cannot take judicial notice of this portion of the

5   Putnam Lovell Employee Handbook because it is not integral to

6   Plaintiff's breach of implied contract allegations. <u>Cf.</u> <u>Parrino v.</u>

7   <u>FHP, Inc.</u>, 146 F.3d 699, 706 (9th Cir. 1998) (holding district

8   court did not err in considering written health plan on motion to

9   dismiss ERISA claims). Evaluation of the effect of the Putnam

10   Lovell Employee Handbook on Plaintiff's implied contract claim

11   would involve factual issues that are not appropriately addressed

12   in a motion to dismiss, such as whether the terms of the handbook

13   extended to its founder and CEO.

14      Defendants contend that, even if the implied contract claim

15   against PLNBF is allowed to proceed, it should be dismissed against

16   NBC and NBF because neither entity employed Plaintiff and thus

17   neither can be held responsible for failure to pay severance.

18   Neither party introduces any authority on the question of whether

19   an entity that is not an employer, but has promised a severance

20   package, may be held liable for failure to pay those benefits.

21   For these reasons, the Court denies Defendants' motion to dismiss

22   Plaintiff's claim for breach of implied contract based on failure

23   to pay severance and other benefits.

24   VII.  Breach of Implied Covenant of Good Faith and Fair Dealing

25      Defendants move to dismiss Plaintiff's companion claim for

26   breach of the implied covenant of good faith and fair dealing on

27   the grounds that such a claim is invalid or superfluous.

28                             19

As Defendants note, under California law an implied covenant theory in the employment context does not provide an basis for relief independent of an express or implied contract. Guz, 24 Cal. 4th at 352. However, the covenant does "prevent[] a party from acting in bad faith to frustrate the contract's actual benefits." Id. at n.18 (emphasis omitted). For the reasons explained above, Plaintiff may proceed with his implied contract claim, and therefore Plaintiff may also proceed with his allegations that Defendants' actions frustrated benefits owed under that implied contract.

Therefore, the Court denies Defendants' motion to dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

CONCLUSION

For the foregoing reasons, the Court GRANTS in part Defendants' motion to dismiss (Docket No. 11) and DENIES it in part as follows. The Court denies Defendants' motion to dismiss Plaintiff's first Global FIG Installment claim for breach of oral contract as well as his sixth and seventh employment-related claims for breach of implied contract and breach of the implied covenant of good faith and fair dealing. The Court grants Defendants' motion to dismiss Plaintiff's second and third Global FIG Installment claims for breach of implied contract and promissory estoppel, with leave to amend if Plaintiff can truthfully allege, without contradicting his original complaint, that portions of the Merger Agreement embracing the same subject matter as the alleged implied contract or alleged promise were rescinded. The Court

denies Defendants' motion to dismiss Plaintiff's fraud claim.
However, Plaintiff may, in an abundance of caution, amend it if he
can allege, truthfully and without contradicting the original
complaint, conduct that constitutes breach of a duty independent of
the contract or special damages.  Plaintiff's fifth Global FIG
Installment claim for breach of fiduciary duty is dismissed with
leave to amend to state a legally cognizable claim.

       Plaintiff may file a first amended complaint within twenty
days of the date of this order.

       The Court GRANTS Defendants' request for judicial notice of
excerpts of the Merger Agreement, but otherwise DENIES Defendants'
request (Docket No. 13).  The Court GRANTS Plaintiff's Request for
Judicial Notice of the entire Merger Agreement (Docket No. 25).
The Court DENIES Defendants' Supplemental Request for Judicial
Notice of additional portions of the Putnam Lovell employee
handbook (Docket No. 30).


       IT IS SO ORDERED.


Dated: 10/5/05

_____
CLAUDIA WILKEN
United States District Judge